IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| L.B. GARRISON, et al., } | |
| } | |
| Plaintiffs, } | |
| } | CIVIL ACTION NO. |
| v. } | 05-AR-0714-S |
| } | |
| WAL-MART STORES EAST, L.P., } | |
| } | |
| Defendant. } | |

**CONSOLIDATED WITH**

| | |
|---|---|
| EQUAL EMPLOYMENT OPPORTUNITY } | |
| COMMISSION, } | |
| } | |
| Plaintiff, } | CIVIL ACTION NO. |
| } | 05-AR-0733-S |
| v. } | |
| } | |
| WAL-MART STORES EAST, L.P., } | |
| } | |
| Defendant. } | |

**MEMORANDUM OPINION**

Before the court is the motion of defendant, Wal-Mart Stores East, L.P. ("Wal-Mart") for summary judgment in both of the above-entitled consolidated actions, one of which was brought by plaintiffs L.B. Garrison ("Garrison"), Sharon Tittle ("Tittle"), Robbie Scobin ("Scobin"), and Beverly McClusky ("McClusky") (together, "plaintiffs") under the Age Discrimination in Employment Act, 29 U.S.C. § 621 et seq. ("ADEA"); and the other by the Equal Employment Opportunity Commission ("EEOC") under the ADEA. For the reasons that follow, the court will deny Wal-Mart's motion.

Facts

Some of the facts material to plaintiffs' and the EEOC's actions against Wal-Mart are disputed. The court will not identify every fact that the parties dispute, but will simply state the pertinent facts in the light most favorable to the non-movants.

Garrison, Tittle, Scobin, and McClusky, all of whom were over 40 years of age when terminated by Wal-Mart, are former employees of Wal-Mart Store 409 ("Store 409"), located in Haleyville, Alabama. Garrison was hired in March 1991 to work in the Receiving Department of Store 409, where he unloaded trucks and stocked shelves. In or about 1995, Garrison was promoted to the position of Receiving Manager, where for aught appearing he was in charge of the nighttime stocking crew. Store 409 closed during nighttime hours before May 2002, but starting on or about May 18, 2002, it stayed open for business 24 hours per day. When Store 409 went 24 hours, Tittle, Scobin, and McClusky, and Stacy Warren ("Warren") worked on Garrison's night stocking crew.

Mike Durham ("Durham") was the Manager of Store 409 from October 1994 through January 2003. In December 2000, Tim Counce ("Counce") transferred from a Wal-Mart store in Fulton, Mississippi to work as an Assistant Manager at Store 409. Counce was initially responsible for the entire night crew at Store 409, and he became the Night Assistant Manager when Store 409 went 24 hours in 2002.

Wal-Mart has written corporate policies which govern employee

2

breaks and meal periods.  Under the break policy, employees are entitled to zero, one, or two 15-minute rest periods for each shift they work, depending on the length of the shift.  Employees receive full compensation for these breaks (or "rest periods") and are not required to clock out while taking them.  Wal-Mart's meal-period policy, as distinguished from its break-period policy, is as follows:

| Length | Meal periods are a minimum of 30 minutes and, with the Supervisor's agreement, may be up to 60 minutes. |
|---|---|
| Eligibility for Meal Period | Associates who work more than six (6) consecutive hours will be provided a meal period. |
| Compensation | Hourly Associates must "clock out" at the start of their meal period and "clock in" when returning to work.<br><br>Associates generally do not receive compensation for meal periods.<br><br>Associates in positions requiring that they be "locked in" and not leave the facility during the meal period do not receive compensation for the meal period except where required by state law.  States that require compensation for meal periods for Associates "locked in" are: California, Connecticut, Massachusetts, New Jersey, North Dakota, Washington, Wisconsin. |
| Scheduling the Meal Period | The Associate's immediate Supervisor is responsible for scheduling meal periods. |

After Store 409 went 24 hours, Counce scheduled the night stocking crew's meal periods.  If Counce was not on duty on a particular night, Garrison scheduled the meal period.  On some

nights, members of the night stocking crew would take a meal period without clocking out, and on other nights they would substitute a 15-minute break for the meal period or would simply not take a meal period at all.  Whenever Garrison took a meal period without clocking out, he did so under the specific direction of Counce. Whenever Scogin, Tittle, or McClusky took a meal period without clocking out, they did so under the specific direction of a supervisor – presumably Counce, Garrison, or occasionally Durham. Moreover, Counce told the night stocking crew that on nights in which they did not intend to work at least 6 hours, they should not take a meal period; Counce and Durham gave Garrison the authority to determine whether he thought the crew would be finished with their work in less than 6 hours and would thus not need to take a meal period.  Additionally, there were occasions when Durham specifically told members of the night stocking crew not to clock out for a meal period, or gave them the option to forgo their meal period in order to get their work done faster.

     On December 7, 2002, Durham went to Store 409 to review the Timeclock Archive Report, which appears to be a printout summary of the hours worked by each employee at Store 409.  While reviewing the report, Durham noticed that the members of the night stocking crew were working overtime but were not clocking out for meal periods.  He called District Manager Mike Hawkins ("Hawkins") to inform him of the issue, and Hawkins told Durham that the members

4

of the night stocking crew should be terminated if an investigation revealed that they were taking meal periods without clocking out. Durham also discussed the issue with Counce, and Counce then reviewed the Timeclock Archive Report and footage from various security cameras. After conducting his review, Counce wrote a statement saying that his investigation revealed that Garrison, Tittle, McClusky, Scogin, and Warren had taken meal periods of between 8.5 and 13 hours without clocking out over a nine-week period, and concluded by accusing them of "gross misconduct" and "theft of company time."

Counce then provided the Timeclock Archive Report, videotapes, and his summary to Lee Jeffreys, the District Loss-Prevention Supervisor of six Wal-Mart stores including Store 409. Durham told Jeffreys that if the members of the night stocking crew did not give a justifiable reason for not clocking out for meal periods, then they should be discharged. Jeffreys interviewed each member of the night stocking crew on December 19, 2002. Wal-Mart says that none of the plaintiffs told Jeffreys that they were instructed or advised not to clock out for certain meal periods by a supervisor, but plaintiffs dispute this assertion. At the conclusion of the interviews, all five members of the night stocking crew were terminated. On December 19, 2002, Garrison, Tittle, Scobin, McClusky, and Warren were 57, 51, 55, 49, and 39 years old, respectively.

5

Before Wal-Mart fired the members of the night stocking crew, Counce made frequent comments regarding Garrison's age.  At least once per week on average, Counce told Garrison that if he had his way he would fire the whole night stocking crew and get a crew of younger people.  Counce told Garrison that he wanted to fire the crew because "younger people learn easier, and I can teach them to do what I want done better."  Warren also heard Counce say that he would like to replace the crew with younger people because they could work faster.  Additionally, Counce nicknamed Garrison "Uncle," because Garrison was "the oldest."  Counce called Garrison "Uncle" more than once, and one time he announced over the P.A. system, "Uncle L.B., will you come to the front."  Garrison reported Counce's comments to Durham, but there appears to be no evidence to suggest that Durham took any action in response.

In addition to Counce's age-related statements, Durham told Garrison when Garrison applied for a different job within Store 409 that "I'm your friend, you will be better off where you are at. And besides, you don't have a lot of good years left.  You would be better off where you are at for the years that you have left."  When Garrison was passed up for a promotion, Durham told him that the reason was that the person who got the promotion had more experience on the floor in dealing with customers.  Counce later told Garrison "that's just an easy way to keep from hurting your feelings.  It's because of your age."

*Summary Judgment Standard*

In considering a Rule 56 motion, the court must construe the evidence and make factual inferences in the light most favorable to the nonmoving party. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Adickes v. S.H. Kress & Co.*, 398 U.S. 144 (1970). The court may enter summary judgment only if it is shown "that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). At this stage, the court does not "weigh the evidence and determine the truth of the matter," but solely "determine[s] whether there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 242-43 (1986) (citations omitted). This determination involves applying substantive law to the relevant facts that have been developed. A dispute about a material fact is genuine if a reasonable jury could return a verdict for the nonmoving party, based on the applicable law in relation to the evidence. *See id.* at 248; *Barfield v. Brierton*, 883 F.2d 923, 933 (11th Cir. 1989).

*Analysis*

Plaintiffs contend that Wal-Mart discriminated against them because of their age in violation of the ADEA when Wal-Mart fired them. In order to succeed, plaintiffs must establish a *prima facie* case through direct, circumstantial, or statistical evidence. *Early v. Champion Int'l Corp*, 907 F.2d 1077, 1081 (11th Cir. 1990). If Wal-Mart is able to counter plaintiffs' *prima facie* showing with

a legitimate, non-discriminatory reason for the terminations, the burden shifts back to plaintiffs to show that Wal-Mart's stated reason was a pretext for unlawful age-based discrimination.  *Id*.

### I. Plaintiff's *Prima Facie* Case

Plaintiffs attempt to support their claim using both direct and circumstantial evidence.  Wal-Mart contends that plaintiffs' *prima facie* case fails based on the undisputed evidence, and that it is entitled to summary judgment.

### A. Direct Evidence

Direct evidence is "evidence which, if believed, would prove the existence of a fact in issue without inference or presumption." *Id.* (citaions omitted).  Plaintiffs contend that Counce's frequent statements to the effect that he would have liked to have gotten rid of the entire crew and replace them with younger employees constitutes direct evidence of discrimination.  Wal-Mart does not deny that such statements could amount to direct evidence had they come from the persons who fired plaintiffs.  It contends, however, that Counce was not the decisionmaker, and that his statements cannot evince improper motive on behalf of Wal-Mart.  Plaintiffs counter that although Jeffreys and Durham issued the firings, Counce influenced their decision to terminate plaintiffs such that he was, in effect, also a decisionmaker.  *See*, *e.g.*, *Lewis v. Y.M.C.A.*, 53 F.Supp.2d 1253, 1260 (N.D. Ala. 1999).

The court concludes that there is sufficient evidence for a

reasonable factfinder to conclude that Counce was a *de facto* decisionmaker with respect to plaintiffs' terminations.  In addition to his age-related comments, Counce conducted the investigation that led to the discharge of the members of the night stocking crew, and he provided Durham with a signed statement in which he concluded that plaintiffs had engaged in gross misconduct and had stolen company time.  Notably, Counce never told Durham or Jeffreys that he had instructed the members of the night stocking crew to not clock out for certain meal periods – and it is undisputed that Counce did not include this alleged fact in his statement.  The court cannot conclude as a matter of law that Counce did not "recommend" that Wal-Mart fire plaintiffs or that he did not take part in the ultimate decision to do so.  *Cf. Llampallas v. Mini-Circuits, Lab, Inc.*, 163 F.3d 1236, 1249 (11th Cir. 1998) (ultimate decision maker was not the "cat's paw" of the harassing employee because there was no evidence that decision maker approved of or accepted the decision or recommendation of the harasser).

**B. Circumstantial Evidence**

Plaintiffs can also establish a *prima face* case of age discrimination under the familiar *McDonnell Douglas* framework. Under that approach, plaintiffs must show with respect to each of them that (i) at the time he was fired, he was a member of the class protected by the ADEA ("individuals who are at least 40 years

9

of age," 29 U.S.C. § 631(a)), (ii) he was otherwise qualified for the position, (iii) he was discharged, and (iv) defendant hired persons outside the protected class. *Reeves v. Sanderson Plumbing Products, Inc.*, 530 U.S. 133, 152 (2000). Wal-Mart does not attempt to discredit plaintiffs' assertion that there exists sufficient evidence for all four plaintiffs to establish each of elements (i) through (iv) above. Thus, the court cannot rule as a matter of law that there is insufficient evidence for plaintiffs to establish their respective circumstantial *prima facie* cases of age discrimination in violation of the ADEA.

## II. Pretext

Wal-Mart contends that if plaintiffs can establish a *prima facie* case of age discrimination, it is nevertheless entitled to summary judgment because it has offered a legitimate, non-discriminatory reason for firing them, namely, that all four plaintiffs stole company time by not clocking out for meal periods. Wal-Mart bolsters the credibility of its stated reason by emphasizing that Wal-Mart fired **every** member of the night stocking crew – including 39 year-old Warren – not just those individuals who were members of the class protected by the ADEA. Plaintiffs counter that Wal-Mart's articulated reason is pretextual, contending, *inter alia*, that:

- In each instance in which plaintiffs did not clock out, it was due to instructions by Counce, Durham, or Garrison.

- Durham said that if plaintiffs were merely following instructions in not clocking out for meal periods, they would not have been terminated.
- Counce made statements directed at plaintiffs which evinced his age bias, and he took part in the decision to terminate plaintiffs.
- Durham told Garrison that "you don't have a lot of good years left. You would be better off where you are at for the years that you have left."

Plaintiffs offer other evidence and characterize it as potential proof that Wal-Mart's stated reason for firing them was a pretext for unlawful discrimination. The court is not entirely convinced that any of this other evidence could demonstrate pretext. However, the court does believe that the three pieces of evidence listed above, if proven, could serve as circumstantial or direct evidence that Wal-Mart's stated reason for firing plaintiffs was not its actual reason. Although Wal-Mart's jury case is strengthened by the fact that it fired all members of the night stocking crew, including a person under 40, this fact alone would not preclude a reasonable jury from finding Wal-Mart's stated reason for firing plaintiffs to be pretextual. Resolving all inferences in favor of the non-moving plaintiffs, the court will deny Wal-Mart's motion for summary judgment by separate order.

DONE this 5th day of January, 2007.

_____
WILLIAM M. ACKER, JR.
UNITED STATES DISTRICT JUDGE